## JEAN E. HOLMES *vs.* STATE OF MARYLAND.

*Criminal Law—Consolidation of Indictments—Inconsistency of Verdicts.*

Where there were a large number of indictments charging defendant with obtaining various sums of money from a person named, and a blanket indictment embracing the aggregate of such sums so obtained and an additional sum, it was proper for the court to consolidate all these indictments, even without the consent of accused.

Where there were a large number of indictments charging defendant with obtaining various sums of money from a person named, and a blanket indictment embracing the aggregate of such sums and an additional sum, a verdict of guilty upon one of the other indictments was not inconsistent with a verdict of not guilty upon the blanket indictment.          pp. 427-429

*Decided July 22nd, 1924.*

Appeal from the Criminal Court of Baltimore City (STANTON, J.).

Criminal proceeding against Jean E. Holmes. From a judgment of conviction, defendant appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Eugene O'Dunne,* for the appellant.

*Herbert Levy, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General,* and *Herbert R. O'Conor, State's Attorney for Baltimore City,* for the State.

DIGGES, J., delivered the opinion of the Court.

On July 2, 1923, the grand jury of Baltimore City found twenty-three indictments against the defendant, Jean E. Holmes, charging her at various times, beginning October 15, 1919, and continuing up to and including September 6, 1922, with having obtained by false pretenses various sums of money from a certain George F. Gaul. These indictments were Nos. 1565, 1566 and 1793 to 1813, both inclusive. Indictment 1793 charged that on September 6th, 1922, the appellant obtained by false pretenses from George F. Gaul the sum of $66,977.24. The other twenty-two indictments charged the appellant with obtaining by false pretenses from George F. Gaul the sums of money set forth and on the dates respectively set forth in these indictments. The aggregate sum charged in the indictments, exclusive of indictment 1793, which we will refer to as the blanket indictment, was $42,967, and the sum of $66,977.24 charged in the blanket indictment embraces and includes each and all of the sums charged in the remaining twenty-two indictments, and in addition thereto the sum of $24,010.24. The multiplicity of indictments in this case is explained by the existence of what is known as the fee system, pertaining to the office of the State's Attorney of Baltimore City, the expenses of that office being paid out of fees received by the State's Attorney. This system has resulted in the State's Attorney augmenting the

receipts of his office by preparing large numbers of indictments, which often, as in this case, are totally unnecessary, and for which the only excuse is that it is necessary to obtain sufficient funds to pay the legitimate expenses of the office.

It appears from the record that at the beginning of the trial of this case in the Criminal Court of Baltimore City and before the taking of the evidence therein, the following papers were filed:

"To the Honorable Judge of said Court:

"The defendant, Jean E. Holmes, in the above enumerated cases of indictments Nos. 1565 and 1566, and sequence 1793 to 1813, inclusive, consents to have the same all tried together at one and the same time, and to that end respectfully moves that the said indictments be consolidated and tried at one time. Eugene O'Dunne, Attorney for Defendant."

"The State's Attorney for the City of Baltimore consents to the consolidation prayed for the defendant in the foregoing petition. Ellis Levin, Assistant State's Attorney."

"Upon the foregoing petition and consent of State's Attorney for the City of Baltimore, it is ordered this 28th day of September, 1923, that the said indictments be and the same are hereby consolidated so as to be tried at one time. Robert F. Stanton, Judge."

The trial was then proceeded with before a jury, and resulted in a verdict of not guilty as to indictments Nos. 1565, 1566, 1793, 1794, and 1795, and a verdict of guilty in the remaining indictments.

Subsequently the appellant filed a motion for new trial and motion in arrest of judgment, and from the action of the Supreme Bench of Baltimore City in overruling the motion in arrest of judgment, and the subsequent judgment and sentence, this appeal is taken. The alleged grounds for the motion in arrest of judgment, for errors apparent upon the face of the record, are, because the verdict of the jury is inconsistent, because before rendering the verdict of guilty

in indictments Nos. 1796 to 1813, inclusive, the jury had
already rendered a verdict of not guilty in indictments Nos.
1565, 1566, 1793, 1794, and 1795, and that indictment No.
1793, on which the defendant was acquitted, involved all of
the charges in each and all of said indictments upon which
the jury found a verdict of guilty, and the sums stated in the
said indictments upon which the jury found a verdict of
guilty were part and parcel of the same sum described in
indictment No. 1793, on which the defendant was acquitted.

The record includes a stipulation that the Assistant State's
Attorney said, in his opening statement to the jury:

"We shall prove to you that Jean E. Holmes is
guilty of the charges that we have made against her.
There are twenty-three cases which, by agreement be-
tween counsel for the State and counsel for the defense,
have been consolidated and are on trial before you at
the same time. They are numbers 1565-6, 1793-1813,
in consecutive rotation. Indictment 1565 contains two
counts, one a count charging false pretenses, and the
second count charging larceny.

"The first count charges that on the tenth day of
July the defendant received by false pretenses from the
prosecuting witness, George F. Gaul, the sum of eight
hundred dollars; the second count charges that she
stole from George F. Gaul the sum of eight hundred
dollars. Now, of course, in the situation that the evi-
dence will present to you in this case, and about which
I will say more to you shortly, this charge of larceny
will simply be technical larceny; it does not amount
to putting the hand in a fellow's pocket and taking
his money; it is what we call, if larceny at all, larceny
by trick. However, the State will probably choose to
rely in this case upon the false pretense count rather
than upon the larceny count.

"In Case No. 1566 the charge is that on the fifteenth
day of October, nineteen hundred and nineteen, this
defendant obtained by false pretenses fifty-five hun-
dred dollars from George F. Gaul. That is the first
count. In the second count she is charged with the

larceny of fifty-five hundred dollars on the date mentioned.

"In Case No. 1793 there is only one count, and that is a count of false pretenses, obtaining the sum of sixty-six thousand nine hundred and seventy-seven dollars and twenty-four cents on September sixth, nineteen hundred and twenty-two. Now, just a word about that indictment. That indictment covers the entire sum that we will show you by testimony this defendant obtained from George F. Gaul during the period that ran from August of nineteen hundred and nineteen. The last was in September, nineteen hundred and twenty-two. And this sum of sixty-six thousand nine hundred and seventy-seven dollars and twenty-four cents is the aggregate of the various sums advanced upon the false representations that were made by the defendant to Gaul during the period that I have stated. The date given in the indictment is the last date upon which a payment was made, the sixth day of September, nineteen hundred and twenty-two; and, under the law, since there is not any limitation against prosecution for a crime like false pretenses, the State of Maryland has a right to run back over an indefinite period in the proof of the things that go to make up the charge. That is number 1793, which is the blanket indictment covering the entire sum obtained. Then the balance of the cases, beginning with No. 1794 and ending with No. 1813, are cases made upon individual items that were obtained at given times."

After the argument in this Court there was also the following letter addressed to the Court:

"The stipulation between State and defendant in the above case, and appearing in Record, pages 30-33, adopted the verbiage of the official transcript merely for accuracy of detail. The statement of the State's Attorney referred to therein was and is true, to wit, that indictment No. 1793, charging the obtaining of $66,977.24 by means of false pretenses, charged the aggregate of all the sums alleged to have been obtained

by the defendant during the entire period, and includes all the sums embraced in the other twenty-two indictments, or, as stated in the record stipulation, page 32, indictment No. 1793 was blanket indictment, covering the entire sum alleged to have been obtained.

"Such being the fact, if the language of the stipulation appearing in the printed record is at all ambiguous, this supplement interpretation is subscribed to, the same being done at the request of the defendant's attorney and does conform to the facts.

> "Herbert R. O'Conor,
> "State's Attorney for the City of Baltimore.
> "Eugene O'Dunne,
> "Attorney for Defendant, Appellant."

The question for determination by us is, first, was the effect of consolidating the twenty-three indictments equivalent to one indictment embracing twenty-three counts? and second, if that be true, was a verdict of not guilty on the blanket count of such indictment inconsistent and repugnant to a verdict of guilty on other counts in the said indictment charging the obtention of money, which were included in the blanket count upon which a verdict of not guilty had been rendered? In *Bishop, New Criminal Procedure,* vol. 1, sec. 421, the rule is stated: "Where the grand jury has found two or more separate indictments against the same defendant, it is within the discretion of the court to order them tried together if they are not discordant and if thus it appears that the ends of justice will be promoted." This rule of practice in criminal cases is sustained by authority and reason. If this could not be done, in cases where parties were charged with a number of similar offenses growing out of the same relationship of the parties and their dealings with each other, in order to have the guilty party tried for the whole of his criminal conduct, it would be necessary to have as many separate trials as there were indictments, thus unnecessarily occupying the time of the court and entailing great hardship upon the defendant in compelling his continuous appearance and adding enormously to the costs. The purpose of twenty-

three indictments in this case was evidently to make fees, as above stated, and it would not have been done except for that purpose, as the defendant could have been tried upon one indictment with the same result upon conviction as being tried upon twenty-three indictments. In the case of *Williams* v. *United States*, 168 U. S. 382, it is said: "The accused having been charged with different acts or transactions 'of the same class of crimes or offenses,' it is scarcely necessary to say that the transactions referred to in the indictments, being of the same class of crimes, could properly, that is, consistently with the essential principles of criminal law, be joined in one indictment against a single defendant without embarrassing him or confounding him in his defense. * * * If the offenses could be joined in one indictment it would follow that separate indictments could, in the discretion of the court, be consolidated and tried at the same time and before the same jury." It follows, therefore, that the court committed no error in consolidating these indictments, if in its judgment the ends of justice would be thus subserved, even without the consent of the accused. In this case, however, the consolidation was made upon the motion of the accused, assented to by the prosecution. After the consolidation the position was identical with an indictment containing twenty-three counts, one of which counts charged the obtaining of $66,977.24, and twenty-two other counts charging the obtention of the various sums set out in the twenty-two indictments in this case, other than the blanket indictment. The blanket count would then include every part or parcel charged in the twenty-two other counts, just as now the blanket indictment includes every sum charged in the twenty-two other indictments. Nor do we see how the accused could be injured by this result. If she was found guilty of obtaining any sum of money from Gaul by false pretenses, she could, of course, be found guilty under the blanket indictment in the one case, or under the blanket count in the other, but if the jury determined from the evidence that she was not guilty of obtaining the whole amount

set out in the blanket indictment or count, but did find she was guilty of obtaining some portion thereof, there is no inconsistency, legal or logical, why they should not say she was not guilty of obtaining the whole amount charged, but that she was guilty of obtaining certain portions thereof. The effect of a verdict of not guilty on the blanket count does not have the effect of a verdict of not guilty of the offense charged, but only that she was not guilty of obtaining the whole sum therein charged. This result could not work to the injury of the accused, but rather the contrary, because if a verdict of guilty on the blanket indictment had been found, which could have been done even though the evidence showed that she had not obtained the whole amount charged therein, the verdict, as rendered, enables the court, in passing sentence, to consider the amount obtained, whereas under a verdict of guilty on the blanket indictment the court would have been unable to determine whether the amount obtained by the false pretense was $66,977.24 or one dollar. This case presents a similar situation, as if an indictment for larceny contained one count charging the accused with the larceny of twenty-two separate and distinct articles from the same person, and then in each of twenty-two additional counts charged the accused with the larceny of a different one of the articles. If in such a case the jury found that the accused was not guilty of the larceny of all of the articles, but found him guilty of the larceny of some of them, there would be nothing inconsistent in a verdict of not guilty on the first count but guilty on one or more of the separate counts. In the case of *Lanasa* v. *State*, 109 Md. 602, the indictment was for conspiracy and contained ten counts. The third count charged the defendants with conspiracy to wilfully and maliciously injure and destroy the property of Joseph Di Giorgio. The seventh count charged them with conspiracy to wilfully and maliciously injure and destroy the property and dwelling house of the said Joseph Di Giorgio. The eighth count charged the defendants with conspiracy to wilfully and maliciously injure and destroy the property and dwell-

ing house, then and there being, of the said Joseph Di Giorgio. The accused was found guilty upon the third count, but was acquitted upon the seventh and eighth counts. A motion in arrest of judgment was made, and the reasons assigned therefor were, that there was an absolute and necessary repugnancy between the verdict rendered by the jury, in that it is shown by the record that by the verdict of not guilty upon the seventh count of the indictment the traverser was acquitted of the identical crime of which he was convicted upon the third count. Upon appeal this Court, speaking through Judge Burke, said: "Nor can we discover any necessary repugnancy between the verdict of guilty on the third count and the verdicts of acquittal on the seventh and eighth counts. In those counts the object of the conspiracy was alleged to be, to injure and destroy the property and dwelling house of Joseph Di Giorgio. The jury might have very reasonably concluded that while the evidence in their judgment did not fully support the allegations of these counts, it did satisfy them that it was the purpose of the accused to injure and destroy some of Mr. Di Giorgio's property. We must conclude that they were so convinced by the verdict of guilty upon the third count and the acquittal upon the others. The sufficiency of the evidence was a question for the jury, and this Court, upon a motion in arrest of judgment, has no power to review their findings."

It will be seen in that case that the only difference between the seventh count, upon which the verdict of acquittal was rendered, and the third count, upon which the verdict of guilty was rendered, was that in the third count the defendants were charged with conspiracy to wilfully and maliciously injure the property of Joseph Di Giorgio, while in the seventh count the words "and dwelling house" were added to the third count. Or in other words, this Court held in that case that the jury found that the accused were guilty of conspiring to injure and destroy the property of Joseph Di Giorgio, but did not find them guilty of conspiracy to injure and destroy the property *and dwelling house* of Joseph Di

Giorgio, and that there was no inconsistency or repugnancy in these findings.  In this case there is no inconsistency in the jury's findings that the appellant was not guilty of obtaining by false pretenses the whole of the amount alleged in the blanket indictment, but did find her guilty of obtaining by false pretenses certain portions thereof.  This is what they intended to say, and did say, by their verdict.  Discovering no error in overruling the motion in arrest of judgment, the judgment of the lower court must be affirmed.

*Judgment affirmed, with costs.*