## ANGELO PERRERA, ET AL. *v.* STATE OF MARYLAND

[No. 42, October Term, 1944.]

52

*Decided December 8, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLANE, COLLINS, GRASON, MELVIN, BAILEY, and CAPPER, JJ.

*Ellis Levin,* with whom was *Joel J. Hockman* on the brief, for the appellants.

*Thomas N. Biddison, Assistant State's Attorney for Baltimore,* with whom were *William C. Walsh, Attorney General, J. Edgar Harvey, Assistant Attorney General,* and *J. Bernard Wells, State's Attorney for Baltimore City,* on the brief, for the appellee.

CAPPER, J., delivered the opinion of the Court.

The appellants, together with Anthony Perrera and Peter DelPozzo, were indicted for the murder of one Christopher Cibelli in the Criminal Court of Baltimore City. This crime happened on the 7th day of January, 1944. Said four persons were also indicted in the same Court for assault with intent to kill and murder one Joseph D. Inqui, Jr., on the said 7th day of January, 1944.

The appellants were tried on both indictments at the same time. The were acquitted on the charge of murder but found guilty of manslaughter; and on the indictment charging assault with intent to murder, they were acquitted. They filed a motion for a new trial, claiming that the verdicts of manslaughter in the first case and not guilty in the second were inconsistent with each other and filed a motion in arrest of judgment upon the same grounds. Both of these motions were overruled. This appeal is taken from the action of the Court in overruling the motion in arrest of judgment and certain exceptions of appellants on questions of evidence.

The facts in this case show that Joseph D. Inqui, Jr., a resident of Baltimore, on January 6, 1944, met Christopher Cibelli, a man from New Jersey, at Belair Market in Baltimore and received from him the sum of five hundred sixty dollars for the purpose of purchasing some liquor in what is known as the black market; that Inqui on the afternoon of the same day went to the eleven hundred block of Washington Boulevard to obtain the liquor when he was robbed of the money in broad daylight by two persons, one of whom was Peter DelPozzo and the other he did not know; that on the same afternoon of the robbery, he met Cibelli at Greenmount and Monument Streets about 5.30 P. M.; that he had seen

appellant Perrera the night of the crime and asked him to talk to DelPozzo about the Washington Boulevard incident; that on the following day at about 4.30 P. M. they met again, and they proceeded together and met Perrera alone on the corner of Ensor and Forrest Streets. They were suddenly joined by appellant LaTerza, Peter Del-Pozzo and another man who was a stranger to them. Del-Pozzo was the man who had robbed Inqui the previous afternoon.

Inqui testified that after this meeting he and Cibelli were ushered into the Rally Bar when almost immediately appellant, Perrera, inquired of him: "What is the idea of you squawking"; that Inqui denied squawking but admitted that he had told Cibelli what happened to his money. At that time DelPozzo was standing next to Perrera and DelPozzo called him a liar; whereupon Cibelli stated to DelPozzo that they had not come there to fight or argue but wanted to get the matter straightened out the best way they could. It was suggested that they sit down at the table. Two tables were drawn together.

Inqui further testified that: "Pete DelPozzo told us to sit by the wall with our backs toward the wall. This Pete DelPozzo was right next to me all the time. He was supposed to sit next to me. When Perrera told him, he said, well, I will sit here next to Joe, you sit on the other end. Pete DelPozzo sat at the other end of the table and immediately an argument started between Cibelli and DelPozzo. I don't remember everything that was said because I was afraid, scared. I knew there was going to be trouble but I heard DelPozzo say he wasn't going to give this money back to anybody. Before that Cibelli told him that we didn't want any trouble, and he was sure that DelPozzo didn't want any trouble, and the best thing to do was to straighten this thing out, get his money back, and that is when DelPozzo said, I am not giving this money back to anybody. In the meantime, LaTerza says, well, supposing you don't get this money. This is when Cibelli said, I will get it back one way or the other. Immediately after he said that

Pete DelPozzo, that was sitting on the end of the table, jumped up from his seat, ran all the way around, around Perrera and was about a foot away from me when he shot me in the stomach."

It further appeared from the testimony of Inqui that after he was shot there was much confusion about the place; that two shots were fired close to his ear and he heard other shots as he ran through the door, he thought at least ten in all. After the shooting, Cibelli was found lying on the pavement outside of the door on the Forrest Street entrance and he died later as the result of bullet wounds received on this occasion; that Inqui did not actually see anyone have a pistol excepting DelPozzo and Antonio Perrera; but while these men were in conversation at the bar, he noticed appellant, Perrera, have his hands in his overcoat pocket. Other evidence in the case disclosed that there were bullets of three different calibre found after the shooting, and it is fairly certain that at least two and possibly three pistols were used in this affray.

The appellants denied that they had met Cibelli by pre-arrangement. Appellant, Perrera, admitted that he had an appointment to meet Inqui the afternoon of the shooting. Both appellants denied that they had a gun—they also testified that they did not do any of the shooting on this occasion.

Exceptions one, three, four, five, and six raised the question of the admissibility of statements made by the State's Attorney in his opening statement and evidence offered in the case concerning the robbery of Inqui on Washington Boulevard. These exceptions were taken upon the theory that the evidence was inadmissible because it pertained to a wholly different crime than the one on trial and was thus prejudicial to appellants.

There was no effort made by the State's Attorney to show that the appellants were present at the scene of the robbery or that either one of them had any connection with it whatsoever. We think the subsequent events, also outlined, clearly show that it was admissible to prove

that Cibelli was robbed by DelPozzo. The money taken from Inqui was the subject of discussion when these appellants sat down at the table in the Rally Bar.

It seems apparent from the evidence that there was some prearrangement between appellants and the actual robber, DelPozzo, to meet Inqui and Cibelli concerning this money. The money was practically the only thing discussed at the meeting. DelPozzo had committed the robbery and the following day appellant, Perrera, met the victim and Cibelli, when, in a moment, they were joined by appellant, LaTerza, and DelPozzo and ushered into the Rally Bar to discuss the return of this money. They were carefully seated at the table and directed to keep their backs toward the wall. Under these circumstances, proof of the fact of the robbery was admissible and necessary to understand the events leading up to and occurring at this meeting. *Callahan v. State,* 174 Md. 47, 197 A. 589; *Hitzelberger v. State,* 174 Md. 152, 197 A. 605; *Mitchell v. State,* 178 Md. 579, 16 A. 2d 161; *Jones v. State,* 182 Md. 653, 35 A. 2d 916, 918.

It is said in *Jones v. State,* supra, that: "Evidence which is relevant is not made inadmissible by reason of the fact that it tends to prove the defendant guilty of a crime other than the one for which he is indicted. Such evidence is not admitted because it is proof of the other crime, but because of its relevancy to the charge upon trial." *Kernan v. State,* 65 Md. 253, 4 A. 124; *Cothron v. State,* 138 Md. 101, 113 A. 620; *Callahan v. State,* supra.

While, as a general rule, evidence of another crime is inadmissible, there are many exceptions which are well-recognized, and we think the evidence offered in this case constitutes a clear exception to the rule.

The law upon this subject is well stated in 22 *C. J. S., Criminal Law,* Sec. 602, page 926, as follows:

"Evidence as to acts, transactions, or occurrences to which accused is not a party, or as to other matters with which he is not shown to have any connection, * * * is inadmissible, unless it is so interwoven with other rele-

vant evidence as to make it impossible to try the case without admitting it. The mere fact that an act or transaction occurs outside the presence of accused does not require its exclusion."

Exceptions 7, 8, and 9 on Inqui's cross-examination were taken by appellant to the refusal of the Court to admit in evidence whether a car found by Federal agents was the car of Cibelli and whether or not the car contained counterfeit ration stamps. It is perfectly clear that this testimony was immaterial and irrelevant to the issues in the case and could accomplish nothing but to add confusion in the minds of the jury. It was not brought out on direct examination, and appellants' counsel refused to make Inqui their witness for the purpose of asking him these questions. The rulings of the lower court on these exceptions were obviously correct. *Gillespie v. State,* 147 Md. 45, 127 A. 727.

Exception No. 10 was allowed by the Court without request of appellant's counsel to a question asked of witness Jean Williams, as follows:

"Q. You know Tony Perrera, the brother of this Angelo that is charged in this case? A. Yes, sir.

"Q. He is the father of the child you have, isn't he? A. That is right."

The Court refused to strike out this testimony. There was no objection interposed by appellants. We are not called upon to say whether under these circumstances the motion to strike out the answer should have been granted because it is apparent that this evidence could not have been injurious to the appellants in any manner and, therefore, its admission was not prejudicial error.

The only remaining question in the case is as to the ruling by the Court upon the motion of appellants in arrest of judgment because of alleged inconsistency of the verdicts in the case.

This motion is the proper one to bring before this Court the legal question of inconsistent verdicts. It was approved in the recent case of *Harris v. State,* 182 Md. 27, 31, 31 A. 2d 609.

In this case the two indictments involved crimes against two separate persons; to wit, Christopher Cibelli and Joseph D. Inqui, Jr. The jury might well have believed that the appellants' connection with the shooting of Inqui was not sufficient. to convict them. Inqui's testimony showed positively that DelPozzo did this actual shooting. The jury may have believed that there was no prearrangement among the appellants and Peter DelPozzo to shoot Inqui. At the same time, they could have arrived at the conclusion that they did meet for the purpose of silencing forever Cibelli's complaint about the loss of his money by killing him, if necesasry, to do so.

As previously pointed out, there were one or two other guns used in the shooting in addition to the gun of DelPozzo. Cibelli was killed during the shooting and no eyewitness saw DelPozzo do it. Cibelli later made a dying statement to the effect that DelPozzo shot him, but in his condition at that time the jury may have paid little or no attention to it; or if they did, they arrived at the conclusion that the appellants were active principals and participants in the shooting of Cibelli.

The jury certainly had the right under the law of this State to render the verdicts in each case which they did render, and there is no such inconsistency in these verdicts as to permit or require this Court to grant the Motion in Arrest of Judgment. *Lanasa v. State,* 109 Md. 602, 71 A. 1058; *Holmes v. State,* 146 Md. 420, 126 A. 116.

Finding no errors in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed, with costs to appellee.*