WILLIAMS *v.* STATE

[No. 13, September Term, 1957 (Adv.).]

(Four Appeals In One Record.)

144

146

*Decided June 7, 1957.*

*Motion for modification of opinion, filed June 18, 1957, denied June 25, 1957.*

The cause was argued before COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ., and KINTNER, J., Associate Judge, Second Judicial Circuit, specially assigned.

*Hugh J. Monaghan, II,* for appellant.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City, Joseph G. Koutz, Assistant State's Attorney,* and *Saul A. Harris, Deputy State's Attorney,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This involves four appeals in one record from judgments

and sentences on August 7, 1956, by the trial judge of the Criminal Court of Baltimore, sitting without a jury.

Defendant, appellant, Hercules Williams, thirty-nine years of age, is the father of four daughters, Yvonne, age 15; Sonja, age 11; Brenda, age 10; and Joyce, age 13, at the time of the trial. The mother of these girls being deceased, the father remarried and was living with his second wife and the aforesaid children at 605 Claymont Avenue, in Baltimore, from August 1, 1955, to July 17, 1956, the time of the alleged offenses in these cases. The first indictment charged the defendant with assault upon Yvonne. The other three indictments, each contained four counts, separately charging the defendant in the first count with unlawfully attempting feloniously and knowingly to have carnal knowledge of; in the second count with feloniously attempting to ravish and carnally know; in the third count with feloniously making an assault upon a female under fourteen years of age with intent feloniously to carnally know and abuse; and in the fourth count with common assault, against the remaining daughters, Sonja, Brenda and Joyce. The cases were all tried together. The trial judge found the defendant guilty under the first indictment, and guilty under counts one and four of each of the three remaining indictments, and sentenced him to serve five years in the Maryland Penitentiary on each indictment, the sentences in each case to run consecutively, making a total of twenty years. From those judgments and sentences the defendant appeals here.

At the trials the State offered in evidence the report of the physical examinations of the four girls made by the police department doctor, Dr. R. L. Markley, on July 20, 1956. This report as to Brenda, age 10, showed "no penetration"; as to Joyce, age 13, "partial penetration"; as to Yvonne, age 15, "no penetration"; and as to Sonja, age 11, "possible partial penetration".

Policewoman Violet Hill Whyte, called as a witness by the State over the objection of defense counsel, testified that on July 19, 1956, in response to a complaint made by neighborhood children, she went to the home of Mr. and Mrs. Williams. Neither parent was home and she left word for

the mother to get in touch with her. Mrs. Williams promptly called her and she asked her to bring any two of her step-daughters to the police station. She brought all four. Policewoman Whyte questioned all the girls in the presence of their step-mother. She questioned Sonja first and obtained a written signed statement from her on July 20, 1956. She also obtained written signed statements from Joyce, Brenda and Yvonne on the same date. These statements were all in the nature of complaints against their father. The defendant was then arrested and Policewoman Whyte interrogated him in the presence of Policewoman Richardson. She said she warned him of his rights, asked him if he knew why he was arrested and "he said yes, he knew, the girls had told him". She then confronted the defendant at the police station, in the presence of his wife and his four daughters, and read to him the written signed statements from each of them. As a result she received a written signed statement from him on July 21, 1956. The State then offered in evidence the statements made by the four girls, over objection of the defendant, and the statement of the defendant, over objection. Sonja's statement was to the effect that her father had put her on the bed and had intercourse with her. After that he called Joyce and did the same thing to her. He had done this "lots of times", the last time being on July 17th. Joyce's statement was that on August 1, 1955, her father was drinking and put her on the bed and penetrated her, causing pain. She told him she was going to tell her step-mother. He threatened to put her in a home or in jail if she did so. Brenda's statement was to the effect that on July 14, 1956, her father had intercourse with her. He had done this several times. Yvonne's statement was to the effect that her father had put his hands on her privates. The statement of the defendant, to whom the statements of his daughters had been read, for the purposes of this case, was as follows:

"I believe their grandmother is back of this. She wants the children. One day I was over there and I went to sleep and while I was asleep the children's uncle James Arthur Leach took my watch and my

pay envelope with fifty-four dollars in it. Sonja saw him do this and she told me. This was last winter. The grandmother said she didn't know who taken it but she loaned me twenty-five dollars. When you get to drinking you ain't no good for yourself. That's the only reason I have done this to Yvonne. I just wasn't thinking about doing and making sex toward her. I feel real awful about this. I am not of myself when I'm drinking. I don't remember messing with her privates. Now as to Joyce. I had been drinking. It was Watkins. Watkins is whiskey and gin mixed. You drink it with orange juice. It's all on Saturday. I must have did what she said because I was drinking. I remember that time. I called her and told her to bring the scrub mop up there and when she come I was sitting on the side of the bed. I remember. I must have did what she said because I was drinking. That is all it could be. About Sonja and Brenda there was a glass of ice water sitting on the night table by the bed. I knocked it over but I think I called Joyce and I think she was the one who brought the mop up there. It was the truth what they say. I tried to intercourse with them."

Policewoman Whyte further testified that defendant dropped his head, apologized to the girls and said that nothing like that would have happened if he had not been drinking, and he would never drink again. She said the defendant was arrested, taken before the magistrate on July 21, 1956, charges were read to him, he was warned of his rights, advised not to talk, and he pleaded guilty at the preliminary hearing to all of the charges. This evidence was admitted over the objection of defendant's counsel. After defendant was placed under arrest, his wife was compelled to give up her work and the family became practically destitute. The children were brought before the Juvenile Court under charge of neglect. There, the girls were very hostile and were unwilling to make any statement, giving as their reasons that

they had been told that, if they testified, their father would go to jail. The defense waived cross examination. The State rested and the defense moved for a directed verdict, which was denied.

Yvonne Williams was then called as a witness for the defense. Under oath she stated that she remembered giving the statement to Policewoman Whyte and that she read and voluntarily signed it. She made these accusations because her father refused to let the girls go on vacation to see their grandmother. They just made up the story between them. Her father did nothing wrong to her and she never saw her father do anything wrong to any of her sisters. She admitted that she had lied about the whole thing because her father did not let them go on vacation. They had all lived with their maternal grandmother at one time and she wanted them to come back. The grandmother did not like her father.

Sonja Williams testified, under oath, that her father had never done anything wrong to her but that a boy named Irvin had "played" with her. She did not see her father do anything to Joyce. She said that she was the one who decided to make up the story about their father, and that she told all of her sisters to do the same thing because she thought they would then be able to go to their grandmother. She further said that her father drinks at times and sometimes gets drunk. Irvin was the only boy who had ever touched her. Brenda Williams testified, under oath, that her father had never touched her immorally and had not done any of the things to her as contained in her statement. He was drunk on the date mentioned therein. The reason she made the statement was because she and her older sisters wanted to go to their grandmother's home. Joyce Williams testified, under oath, that her father had never done any of the things to her as contained in her statement and had never touched her in any immoral way. She had had relations with a boy named McKinley, who lived next door to her grandmother, once in May or June, 1956. Her father always drinks on Saturdays. The reason they made the statements was because they wanted to go on vacation and stay with their grandmother the rest of the summer. Sonja made up the story for

them. She admitted that she had been riding with some men in a car and returned home at 2:30 A. M.

Ada Williams, defendant's present wife and step-mother of the children, testified as to her husband's character and said she had never advised her step-daughters to lie about the case, but told them always to tell the truth. She had never seen her husband do anything wrong. The children wanted to go to their grandmother's home for the summer vacation and they were told that they could not go because she and their father were working, and they would have to do the housework. The grandmother wanted the children all the time and never wanted them to keep the children.

Hercules Williams testified in his own defense and stated that he had never made any improper advances or done anything immoral to any of his daughters. He admitted giving the statement to the police voluntarily. He said he drinks every weekend and at times he gets intoxicated, but when he does he goes to bed. He gave and signed the statement because he was so shocked that he did not know what to do, and he thought that if he did so, it would keep the matter out of the papers. He admitted that he had been previously convicted for assaulting his wife, and for desertion and non-support.

The trial judge stated that it was obvious to him that the testimony given by the girls in court was not true and he believed the signed written statements given to Policewoman Whyte and found the defendant guilty. On August 15, 1956, appeals were taken to this Court from the judgments and sentences.

On October 26, 1956, more than two months after the trials and sentences, the trial judge held a further hearing. He stated that he was not reopening the cases but he thought that additional information or testimony had been developed which ought to be made a part of the record. The defendant's counsel objected to any additional evidence or testimony being put in the record. At that hearing each of the girls took the stand and testified under oath that the original signed statements given to Policewoman Whyte on July 20th were the truth. The reason they testified at the former trial that the

statements were untrue, was because their step-mother had asked them to deny the statements because their father would have to go to jail. She had threatened and persuaded them to deny these statements. That is the reason they lied on the witness stand. At the time of the hearing on October 26th they were living with their grandmother and admitted that Policewoman Whyte, since the former trial, had come to their grandmother's home and talked to them. Other written statements, obtained by Policewoman Whyte from the girls, were offered in evidence repudiating their former testimony given in the August trial and affirming the first signed statements of July 20th.

The defendant contends that his motion asking for separate trials under each of the several indictments should have been granted. Where two or more separate indictments have been found against the defendant, it is within the discretion of the trial court whether the cases should be tried separately or together, if they are not discordant and if it appears that the ends of justice will be promoted. In cases where a party is charged with a number of similar offenses growing out of the same relationship of the parties and their dealings with each other, to have separate trials would unnecessarily occupy the time of the court and add enormously to the costs of the case. *Holmes v. State,* 146 Md. 420, 425, 126 A. 116. The confession in this case related to all of the cases and showed a common scheme on the part of the father at practically the same time and place to attack his daughters when he became intoxicated. When the defense asked for separate trials the State objected on the ground that the testimony of Policewoman Whyte would have to be repeated in each case and nothing could be gained by having separate trials. The attorney for the defense stated: "* * * that is one of the reasons why I object to having them tried together. I think it would take maybe two or three minutes longer at the most to try them separately." It therefore appears that no substantial reason was stated to the court why the severance should have been granted. The matter therefore was in the discretion of the court. *Gray v. State,* 173 Md. 690, 195 A. 591; *Jones v. State,* 185 Md. 481, 487, 45 A. 2d 350. We see

no prejudice to the defendant in trying these cases together.

Defendant also contends that the doctor's report of possible partial penetration of Sonja should not have been admitted because it was too indefinite to have any probative value. As was stated in *Charlton Bros. Co. v. Garrettson,* 188 Md. 85, 94, 51 A. 2d 642, the law requires proof of probable, not merely possible, facts.

Defendant further contends that the trial judge was in error in permitting the girls' statements to be introduced in evidence without first calling those witnesses, who were in court and available, to testify. In trials before the trial judge, sitting without a jury, the order of proof is not important. The girls' statements were admitted in evidence as part of the defendant's confession. These were read to him by the police officer and he made certain statements in answer thereto and in connection therewith and he adopted the girls' statements as part of his confession. This is similar to a case in which police officers ask an accused certain questions and the accused answers those questions. In such cases the questions and answers become a part of the confession. In this case the defendant voluntarily admitted that the girls' statements read to him were true and those statements were properly admissible as part of his confession. *Curreri v. State,* 199 Md. 54, 56, 57, 85 A. 2d 454. The case of *State v. Wooley,* 215 Mo. 620, 115 S. W. 417, involved a statement made by the defendant's wife implicating him in the commission of a murder. This statement was read to the defendant in the presence of his wife and other witnesses at which time the defendant admitted that it was correct in its material details. The wife did not testify as to the facts recited in the statement at the trial but the statement was admitted as a confession of the defendant. On appeal the Court pointed out that the wife could not have testified against her husband under the Missouri law. It was held that the statement was properly admitted as a confession.

Defendant further contends that there was not sufficient evidence to corroborate his confession. With this contention we agree. It has been repeatedly held in this State that an extra-judicial confession of guilt of a person accused of crime,

uncorroborated by other evidence, is not sufficient to warrant a conviction. There must be independent evidence to establish the *corpus delicti* of the crime. *Weller v. State,* 150 Md. 278, 284, 132 A. 624; *Markley v. State,* 173 Md. 309, 317, 196 A. 95; *Jones v. State,* 188 Md. 263, 271, 52 A. 2d 484. It is necessary that the jury, or the court before whom the case is tried without a jury, be convinced beyond a reasonable doubt of the defendant's guilt. An uncorroborated extra-judicial confession does not establish the commission of a crime beyond a reasonable doubt. As to the statement by Policewoman Whyte that the defendant pleaded guilty at the preliminary hearing, the purpose of a preliminary hearing before the magistrate is for the purpose of determining whether there is probable ground to believe the accused guilty. The magistrate, therefore, can only commit the accused for appearance before the grand jury, subject to bail under certain circumstances, or discharge him. That hearing is primarily for the benefit of the accused, insuring him against being committed for action by the grand jury on charges which are groundless. *Criminal Procedure from Arrest to Appeal, Orfield,* page 67. There is no reason why the accused should be required to enter a plea at that hearing. *Hochheimer, Criminal Law,* 2d Ed., Section 72; *Smith v. State,* 210 Md. 440, 443, 124 A. 2d 839. Where, however, such a plea is voluntarily made by the accused, evidence of the plea is generally held to be admissible in the trial on the indictment. If considered a confession, it is extra-judicial. 141 *A. L. R.* 1335, and cases there cited.

The purpose of the rule requiring corroboration of confessions is to guard against convictions based alone upon untrue confessions. *Warszower v. United States,* 312 U. S. 342, 61 S. Ct. 603, 85 L. Ed. 876; *Bollinger v. State,* 208 Md. 298, 305, 117 A. 2d 913. It is true, of course, that the *corpus delicti* may be proved by circumstantial evidence when direct evidence is not available, and that the evidence necessary to corroborate a confession need not establish the *corpus delicti* beyond a reasonable doubt. The corroborating evidence is sufficient if, when considered with the confession, it satisfies the trier of fact beyond a reasonable doubt that the crime

was committed and that the defendant committed it. *Wood v. State,* 192 Md. 643, 650, 65 A. 2d 316; *Hall v. State,* 213 Md. 369, 131 A. 2d 710. The written signed statements of the girls were not admissible as independent evidence of the crime, but merely as part of defendant's confession. As independent evidence these statements were merely hearsay. *Mason v. Poulson,* 43 Md. 161, 176, 177; *Foble v. Knefely,* 176 Md. 474, 6 A. 2d 48. Of course, in cases of alleged rape, the fact that the woman raped had promptly complained of it to suitable persons and showed marks of violence and other like indications as confirmatory of her *sworn* testimony may be shown. But before impeachment of her testimony " 'Neither the particulars of her complaint nor the name of the person whom she accused can, by the English and more prevalent American practice, thus be given.' " *Blake v. State,* 157 Md. 75, 78, 79, 145 A. 185. See also *Parker v. State,* 67 Md. 329, 10 A. 219; *Legore v. State,* 87 Md. 735, 41 A. 60; *Green v. State,* 161 Md. 75, 155 A. 164. The State in its brief admits: "These statements were admitted as confessions or admissions of the appellant and not as the testimony of the girls themselves." The girls under oath testified that these statements were untrue.

Here, the only possible evidence to corroborate the confessions are the medical reports filed by Dr. Markley as to his examinations on July 20, 1956. As to Brenda, the report showed no penetration. This, of course, was no corroboration of the crime against her. As to Joyce, Dr. Markley testified to partial penetration. However, in the first statement she signed she was not asked whether she had had relations with anyone else. In her statement under oath in the trial she testified that she had had relations with a boy once in May or June, 1956, before this examination. The partial penetration could have been by him. As to Yvonne, the medical report showed no penetration and, therefore, there was no corroboration of the charge as to her. As to Sonja, the report showed possible partial penetration. As set forth herein, even in a civil case the law requires proof of probable, not merely possible, facts. *Charlton Bros. Co. v. Garrettson, supra.* Furthermore, Sonja testified under oath that one boy had

156

"played" with her. Whatever Dr. Markley found could just as well have resulted from that boy's actions as from what her father allegedly did. We, therefore, find no corroboration of the confessions.

The trial judge specifically stated that he believed the statements which the girls originally made and not their sworn testimony in court. These statements not being substantive evidence in the case, should not have been considered except as part of the confession.

As to the testimony taken on October 26, 1956, more than two months after the trial and well over two months after the appeal was taken to this Court, it is admitted by the State that it had no bearing on the judgments and sentences here appealed from. The trial judge was without jurisdiction to take further action in the case after the appeal to this Court was filed. *Collier v. Collier*, 182 Md. 82, 85, 32 A. 2d 469; *Tiller v. Elfenbein*, 205 Md. 14, 19, 106 A. 2d 42.

As there was no evidence to corroborate the confessions made by the defendant, the motion for directed verdicts should have been granted. The judgments will therefore be reversed and new trials awarded. *Nolan v. State*, 213 Md. 298, 131 A. 2d 851, and cases there cited.

*Judgments reversed, costs to be paid by the mayor and city council of Baltimore, and cases remanded for new trials.*