(Decided 11th March, 1886.)

PATRICK KERNAN *vs.* STATE OF MARYLAND.

*Homicide—Admissibility of Evidence.*

On a trial for murder, evidence of what occurred at a saloon, a half square from the saloon where the homicide occurred, and only four or five minutes before the killing, is admissible to show the movements and general conduct of the prisoner, immediately preceding the killing, and that he was armed and prepared for mischief, and in a frame of mind likely to result in mischief.

What was said and done by others at the same time and in company with the prisoner, was only a part of what he was directly connected with, and was inseparably connected with the history of his conduct at the time, and necessary to an intelligent appreciation of his actions.

APPEAL from the Circuit Court for Anne Arundel County.

Patrick Kernan was indicted in the Criminal Court of Baltimore for killing one Thomas Kernan. The prisoner pleaded "not guilty," and upon his suggestion and affidavit, the case was removed for trial to the Circuit Court for Anne Arundel County.

*Exception.*—At the trial of the case, among other things, the State offered to prove by Edward J. Kernan, a son of the deceased Thomas Kernan, and by other witnesses,

that on the night of the day mentioned in the indictment, and only about four or five minutes before the homicide, he, the said Edward J. Kernan, met the defendant in company with George Shields, William Randall and Thomas Hopper, in front of a saloon kept by one Tracey, about half a square from the scene of the homicide; they all had been drinking but knew what they were about; that the defendant asked witness to take a drink, which the witness declined, but said he would take a cigar; that they all went into said saloon, the witness last; that a young man by the name of McCabe was about coming out of said saloon, when the prisoner took hold of him, put his arms around him, and pointed his pistol to McCabe's breast, saying to him, " you must fall in line Monday, (referring to a coming election on Monday,) or I will make every son of a bitch of you jump ? " McCabe knocked the pistol down with his hand, when the defendant forced McCabe back into the saloon from which he was about to go out; that after releasing McCabe, the prisoner went to the bar of the saloon with his pistol still in his hand; Tracey was behind the bar and Hopper on the outside quarrelling with him; Hopper took out his pistol and laid it on the bar with the muzzle towards Tracey; that thereupon Tracey left the bar hurriedly through a small door behind it, and the defendant, Shields, Hopper and Randall went into the street, when the said Shields proposed to " go to the old man's (meaning the deceased, who kept a saloon,) to get a drink;" that thereupon Hopper, Shields, Randall and the defendant went up Harford avenue to the saloon of the deceased, the witness following; that as they approached the saloon, the deceased was standing in the door of his grocery store, the saloon being kept in the back part of said store; that the deceased, in the meantime, went behind his bar, when the defendant, Hopper, Shields and Randall passed through the grocery store to the front of the bar, when the defendant called witness' father

Kernan *vs.* The State of Maryland.

"a son of a bitch," and the deceased called the defendant the same, and angry words passed between them, when the deceased ordered the prisoner out of the house, and while deceased stood behind the bar and they were quarrelling, the prisoner drew his revolver and fired at him, causing the deceased to stagger out from behind the bar toward the prisoner; the prisoner then fired three other shots, one of the four shots having struck the deceased in the leg, and another in the heart, from which last mentioned shot he instantly died.

To the admissibility of all that part of the testimony which related to what took place in Tracey's saloon between the prisoner and McCabe, and between Tracey and Hopper, the prisoner, by his counsel, objected, but the Court, (Full Bench,) overruled the objection and admitted the evidence. The prisoner excepted.

The jury rendered a verdict of "guilty of murder in the second degree, and not guilty of murder in the first degree." The prisoner appealed.

The cause was argued before ALVEY, C. J., STONE, ROBINSON, IRVING, and BRYAN, J.

*James Revell,* and *Thomas C. Ruddell,* for the appellant.

Was the evidence objected to, and admitted, a part of the *res gestae?* We think not. It proved an assault committed at a different time, and place, and upon another person. The homicide did not arise from the assault committed on either McCabe or Tracey, but arose out of a different quarrel with another and a different person. The deceased was not present when the assaults were committed, nor were McCabe or Tracey present when the homicide was committed. It is very true that in point of time, the assaults were close to the homicide, but there must be something more than proximity of time to make

them admissible by reason of being a part of the same transaction—"immediateness is tested by closeness, not of time, but by causal relation." *Wharton Crim. Evid.*, 265.

If the defendant had been on trial for an assault to kill Tracey, would the evidence of the homicide have been admissible? *People vs. Gibbs*, 93 *N. Y.*, 470.

On the trial of a person for an assault with intent to rob, it is error to admit testimony tending to prove that the defendant committed another assault about five minutes before, as the obvious effect of such evidence would be to prejudice the minds of the jury and prevent them from impartially considering the merits of any defence that might be relied upon. *Coble vs. State*, 33 *Ohio St.*, 100.

Was it admissible for the purpose of proving malice or intention? The same principles that apply to the proof of facts are applicable for the proof of criminal intent. The intent should be ascertained from the act and the circumstances which accompany the act. This is the legitimate source from which to draw evidence of the *quo animo*. It is true that proof of other criminal offences may afford a very strong and violent presumption of the intention of the accused in the particular act under consideration, but proof of collateral crimes for such a purpose has never been held admissible in any Court. Let it be granted that the evidence offered, tended to prove that the defendant was a man of most violent temper and disposition, then it would be inadmissible, because no man can be convicted on account of his evil propensities. It was a matter of perfect indifference at the trial of this case, whether the prisoner was a man of the most violent character or one of the mildest saints in the community. The questions at issue were—did he kill the deceased without legal excuse? did he intend to kill him, and did he kill him with premeditation? If so, he was guilty of the highest crime charged in the indictment.

Kernan *vs.* The State of Maryland.

If the theory of the defence was true, the defendant was justified in taking the life of the deceased. Now if evidence of his conduct was admissible because committed four or five minutes previous to the killing, why stop at minutes? Why not extend the time to hours, days or years? Evidence of murders and aggravated assaults (if it had been attainable by the State) committed by the defendant during his past life, would have been strong moral testimony that he was a man totally regardless of human life and fatally bent on mischief; yet, such evidence would not be admissible.

To the general rule that collateral crimes are not admissible as proof of guilt, there are many well-known exceptions, as when the collateral crime is offered for the purpose of showing guilty knowledge, system, identity, motive, intent, or as part of the *res gestae;* but the evidence of what occurred at Tracey's saloon, does not come within any of these exceptions. This evidence should certainly have not been received unless we can say that the assaults upon McCabe and Tracey tended, by a clear and logical sequence, to prove the commission of the homicide. *State vs. La Page,* 57 *N. H.,* 245 ; *Farrer vs. State,* 2 *Ohio St.,* 75 ; *Shaffner vs. Commonwealth,* 72 *Penn. St.,* 65 ; *Com. vs. Cole,* 5 *Gratt.,* 696 ; *State vs. Merrill,* 2 *Dev. (N. C.,)* 269; *Barton vs. State,* 18 *Ohio,* 222 ; 2 *Dallas,* 357 ; *Rex vs. Birdseye,* 4 *C. & P.,* 386 ; *State vs. Shuford,* 69 *N. C.,* 490.

*Charles B. Roberts, Attorney-General,* for the appellee.

This Court has said in *Hays vs. State,* 40 *Md.,* 650, that "the time, place and circumstances, at and under which a crime is committed, are always admissible and proper evidence upon a criminal trial." The circumstances admitted in evidence in this case were of so recent occurrence as to almost form a part of the transaction itself, which resulted in the killing of Kernan, and if the conduct of others, who

happened to be with the appellant at the time, has been brought into view, it was only because they were inseparably connected with the appellant in the prelude to the crime of which he has been found guilty. The appellant's conduct in Tracey's store was properly allowed to go to the jury, as it exhibited his condition a few minutes before his deadly dealing with Kernan; it showed that he was under the influence of liquor to such an extent as to have aroused all the brutality of his nature, and to have subordinated all his better sentiments; it established the fact that he was armed with a dangerous weapon and ready for an affray, in fact, was seeking one, and finally obtained a victim in the old man Kernan, whom he shot down and killed in his own house.

It is always relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less, improbable. 1 *Wharton Law of Evidence, secs.* 20, 21, 38, 39; *Wharton's Cr. Ev., secs.* 31, 32, 48.

IRVING, J., delivered the opinion of the Court.

The sole exception in this case is to the admission of evidence showing what occurred at another saloon, a half square from the saloon where the homicide occurred, and only four or five minutes before the killing was done. The only question, therefore, is whether there was error in the admission of that evidence. If the evidence had been offered for the purpose of showing an assault upon another person at a different place and time, a different question would have been presented, and one on which there is conflict of authority, and upon which we do not feel called upon to pass in this case. So eminent a legal writer as *Roscoe, 7th Ed., page* 90, says the notion "that the evidence in itself discloses another offence makes it inadmissible, is now exploded," and he cites numerous authorities in support of his position; but, as we said, we do not decide that question. The evidence was clearly not offered or ad-

mitted for the purpose of showing another offence at or near the time and place of the killing. It cannot be said that it proves any such offence. It was evidently offered to show the movements of the prisoner and his general conduct immediately preceding the offence of which he has been convicted; to show that he was armed and prepared for mischief, and was seemingly, at that moment, bent on mischief, and in a frame of mind likely to result in mischief. It can not have been offered to show his character for turbulence, and was not admissible for such purpose. A simple act of that kind would not prove that he had that character. But such an act, so soon followed by the killing of a man, did show a reckless and mischievous frame of mind at a period so near the killing as to be admissible; though the thing itself may not, possibly, be legitimately part of the *res gestæ*. We think it was evidence to show he was armed and prepared to kill, though it did not of itself show intention to kill the deceased. If it had been offered to show that he then and there procured the pistol, it would have been clearly admissible, just as much so as if it had been shown he procured it some hours before. He was *then armed with a deadly weapon*—had already prepared himself for the worst, and was recklessly exhibiting it. What was said and done by others, at the same time and in company with him, was only a part of what he was directly connected with, and was inseparably connected with the history of his conduct at the time, and necessary to an intelligent appreciation of his doings. We think the law is correctly extracted from the authorities and summarized in 8*th Ed. of Wharton on Evidence, secs.* 31, 32. It is there laid down that evidence of the character here involved, is admissible for the purpose of showing and " explaining the movements and general conduct of the prisoner before and after " an offence which immediately preceded the one for which he is being tried. The case of *Regina vs. Gardner,* 5 *Cox Crim. Cases,* 140, notably sustains Mr.' Wharton in the statement of the law he makes.

The cases cited and relied on by appellant's counsel do not in our opinion need comment, as they do not reach or meet the question which we here decide. We find no error, and the ruling will be affirmed.

> *Ruling affirmed, and*
> *cause remanded.*

(Decided 12th March, 1886.)