# WOOD *v.* STATE

[No. 37, October Term, 1948.]

*Decided December 9, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Hamilton O'Dunne* for the appellant.

*Harrison L. Winter, Assistant Attorney General,* and
*John C. Weiss, Assistant State's Attorney for Baltimore
City,* with whom were *Hall Hammond, Attorney General,
J. Bernard Wells, State's Attorney for Baltimore City,*
and *William H. Maynard, Deputy State's Attorney for
Baltimore City,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Roy Arnold Wood was tried before a three-judge court
without a jury in the Criminal Court of Baltimore City,
on a charge of murdering Joseph D. Benedict, a police
officer. He was found guilty of first-degree murder and
sentenced to death. To understand the issues raised on
this appeal, it is necessary to state the facts in some
detail.

On February 13, 1948 at about 3:15 A. M. Wood en-
tered a black and white "Sun" taxi-cab, driven by How-
ard P. Prough, at the corner of St. Paul and Center
Streets, in Baltimore City, in which another passenger
was riding. This other passenger was discharged at
708 St. Paul Street, from which point Prough proceeded
up St. Paul Street towards the destination given him by
Wood at 20th Street and Greenmount Avenue. When
the cab was just beyond the intersection of North Avenue
and St. Paul Street, at about 3:20 A. M., the appellant
placed a .38 caliber pistol at the back of Prough's neck
and said: "This is a stick-up". Wood then ordered him
to drive to the Old York Road. When they reached a
point about two blocks from 42nd Street and Greenmount
Avenue, Wood took Prough's money. He then ordered
him to drive south on Greenmount Avenue. Prough man-
aged to switch on his overhead burglar alarm. In the
4400 block, Prough noticed a police car, which flashed

its lights at him. Wood saw the car and threatened to shoot. He made Prough drive to Calvert and 30th Streets, where Wood ordered Prough out of the cab and drove off in it. Prough ran to Greenmount Avenue and 30th Street, where he found a police car and at about 3:45 A. M. informed Sergeant Mann and Officer Benedict what had happened.

In the meantime, Wood drove the stolen cab to 20½ Street and Guilford Avenue, where he abandoned it. At about 3:50 A. M. he hailed another cab of the same company, a few blocks away. Wood entered the front seat beside the driver, Michael J. Kuczak, directing him to drive to Loch Raven Boulevard and 33rd Street. Kuczak noticed that his passenger kept looking in the rear-view mirror. As the cab crossed 33d Street, Kuczak observed that a car was following them. At Loch Raven Boulevard, he stopped for a red light, and a police car pulled alongside on the right. Sergeant Mann, in the police car, asked Kuczak if he was "all right". Wood pulled out his pistol, placed it in Kuczak's ribs and said: "Don't stop, keep going." Kuczak made an effort to start but stalled the cab. Wood opened the cab door. At this moment, Officer Benedict walked around in front of the headlights of the police car, towards the cab door. Wood got out, ran towards Benedict, fired at him, and ran across the street. According to Kuczak, Benedict was about three feet away when the shot was fired, and his hands were empty.

When Sergeant Mann and Officer Benedict received the report from Prough, they began to cruise around, looking for the stolen cab. At about 4 A. M. they saw a cab of the same company proceding north on Greenmount Avenue, and followed it. They pulled alongside this cab at a red light. When Benedict was shot through the lung he collapsed on the left front fender of the police car, and within a few minutes died of his wound. The pistol, shown to be the one from which the fatal bullet came, was found on Wood when he was arrested, and offered in evidence.

Substantially all of the foregoing facts were admitted by Wood, who took the stand in his own defense. He admitted robbing Prough and taking his cab. He admitted getting into Kuczak's cab, and seeing a car following them. He testified that he pulled out his pistol at the light and ordered Kuczak to proceed, but the cab stalled. He had the gun to "scare" people and never intended to shoot anyone. He saw a policeman get out of the right door of the other car and come around in front of it. He was panic-stricken and opened the door to run and escape. He ran forward, slipped on the icy street and collided with Benedict, who grabbed him. The gun was in his hand when he opened the door. He couldn't remember pulling the trigger although it was his gun that fired. The gun was loaded because "I could scare people with it by shooting it".

In this appeal the appellant contends that evidence of the armed robbery of Prough should not have been admitted over his objection, and that it should have been excluded on motions which were denied. Much, if not all, of this testimony was admitted subject to exception, and at the conclusion of the case the court heard extensive argument, raising the points here made. The court said: "We deny the motion to strike out all the testimony relevant to the robbery of the witness, Prough. That was the motion left pending * * *." The court also denied motions designed to limit the effect of that testimony to the charge of premeditation in the indictment. Under the circumstances we think the objections were properly preserved for consideration by this court.

The indictment charged that Wood, on February, 13, 1948, "at the city aforesaid, feloniously, wilfully and of deliberately premeditated malice aforethought, did kill and murder one Joseph D. Benedict". It followed precisely the language set out in section 665 of Art. 27 of the Code, which provides: "In any indictment for murder or manslaughter, or for being an accessory thereto, it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula sub-

stantially to the following effect: 'That A. B., on the —————— day of —————— nineteen hundred and —————, at the county aforesaid, feloniously (wilfully and of deliberately premeditated malice aforethought) did kill (and murder) C. D.' "

The appellant did not challenge the sufficiency of the indictment, but contends that the evidence relating to the Prough robbery was inadmissible to prove premeditation. "As a general rule, upon the trial of a criminal case, evidence of the commission of other independent crimes by the defendant is inadmissible to show either guilt or that the defendant would be likely to commit the crime with which he is charged * * *. Evidence of the commission of independent crimes is irrelevant where it has no tendency to prove some material fact in connection with the crime charged or where it merely tends to show that the accused is a criminal generally. * * * If evidence is relevant, it is immaterial that it shows the commission of another crime." *Wharton, Criminal Evidence,* 11th Ed., § 343. "If evidence of another crime tends directly to prove the defendant guilty of the crime for which he is being tried, or if the other crime and the crime charged are so linked together in point of time or circumstances that one cannot be fully shown without proving the other, the general rule of exclusion does not apply. * * * If proof of another crime explains or accounts for the crime for which the accused is on trial, it is relevant and competent. * * * collateral offenses may be shown to prove the mental processes or mental attitude of the accused" such as motive or intent. *Wharton, supra,* § 345. See also *2 Wigmore, Evidence,* 3d Ed., § 363; *Underhill, Criminal Evidence,* 4th Ed., §§ 180-184. The Maryland cases fully recognize these principles. *Purviance v. State,* 185 Md. 189, 196, 44 A. 2d 474; *Perrera v. State,* 184 Md. 51, 40 A. 2d 53; *Jones v. State,* 182 Md. 653, 35 A. 2d 916; *Wilson v. State,* 181 Md. 1, 26 A. 2d 770; *Berger v. State,* 179 Md. 410, 20 A. 2d 146; *Mitchell v. State,* 178 Md. 579, 16 A. 2d 161; *Callahan v. State,* 174 Md. 47, 197 A. 589. In *Kernan v.*

*State*, 65 Md. 253, 259, 4 A. 124, evidence was admitted to show an assault with a pistol upon another person, in a saloon a half square away from the scene of the fatal shooting. It was held admissible "to show that he was armed and prepared for mischief, and was seemingly, at that moment, bent on mischief, and in a frame of mind likely to result in mischief. * * * it was evidence to show he was armed and prepared to kill, though it did not of itself show intention to kill the deceased. * * * [It] was inseparably connected with the history of his conduct at the time, and necessary to an intelligent appreciation of his doings".

Tested by the standards laid down in these cases, we think it is clear that the evidence relating to the Prough robbery, within three-quarters of an hour prior to the fatal shooting, was properly admitted. Wood's prior conduct was directly and inseparably related to the killing, and bore upon his motive and intent. As was said in *Suhay v. United States*, 10 Cir., 95 F. 2d 890, 894: "The evidence relating to the offenses committed in New York [bank robberies] was material upon the question of motive for the homicide. It tended to show that the appellants killed the deceased with deliberation, premeditation, and malice aforethought for the purpose of avoiding arrest for return to that state for prosecution." The evidence being admissible, we cannot pass upon its weight, or sufficiency to establish premeditation. *Hill v. State*, 190 Md. 698, 59 A. 2d 630; *Jones v. State*, 188 Md. 263, 52 A. 2d 484.

The appellant contends, however, that even if admissible to show premeditation, it was inadmissible to show a murder committed in the perpetration of a robbery, both because the indictment charges only premeditated murder, as distinguished from murder committed in the perpetration of a robbery, and because under the facts of the case the robbery was completed and hence the evidence of the robbery was not relevant. The appellant argues, in his separate and supplemental brief, that "the State resorted to using the robbery charge as a subter-

fuge in order to get a conviction of first degree murder, for if they proved that the shooting occurred during the process [progress] of a robbery it wouldn't be necessary to prove premeditation in itself."

Section 478 of Art. 27 of the Code provides: "All murder which shall be committed in the perpetration of, or attempt to perpetrate, any rape, sodomy, mayhem, robbery, burglary, or in the escape or attempt to escape from the Maryland Penitentiary, the House of Correction, the Baltimore City Jail or from any jail or penal institution in any of the counties of this State, shall be murder in the first degree." The appellant contends that since the indictment charged premeditated murder under section 665 of Art. 27, the charge would not include or permit proof of murder in the perpetration of a robbery under section 478. We think the contention is unsound.

At common law, as Blackstone states, (*4 Commentaries,* p. 197), the word murder had the well-defined meaning of a killing with "malice aforethought". Malice could be express or implied from conduct as where "one intends to do another felony, and undesignedly kills a man, this is also murder." He also states (*4 Commentaries,* p. 307) that the words "murder" and "feloniously" must be used in an indictment. Degrees of the crime were unknown to the common law. As we said in *Abbott v. State,* 188 Md. 310, 312, 52 A. 2d 489, 490: "Section 475, Article 27 of the Code, Chapter 138, Acts of 1809, provides that 'all murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree'. Section 479 provides that 'All other kinds of murder shall be deemed murder in the second degree'. These sections do not create new offenses, but merely divide the common law crime, and mitigate the punishment in cases of the second degree. *Davis v. State,* 39 Md. 355." In the *Davis* case it was pointed out (39 Md. page 374) that the statute deals with murder "as a general denomination. * * * Its common law sense is left unimpaired." Section 478, which was a part of chapter 138, Act of 1809, does not

create a new crime, but merely serves the purpose of classifying murder in the perpetration of a robbery as a species of murder in the first degree. Section 665 (first adopted by ch. 248, Acts of 1906) likewise does not create any new crime, but merely furnishes a shortened statutory form which may, but need not, be used in lieu of the common law forms. Compare *Kelley v. State,* 181 Md. 642, 31 A. 2d 614, and *Neusbaum v. State,* 156 Md. 149, 143 A. 872.

It is suggested, however, that the parentheses around the words: "(wilfully and of deliberately premeditated malice aforethought)" and the words "(and murder)", in Section 665, are merely illustrative, and contemplate that the language of the particular type of first degree murder, sought to be proved, should be inserted in a given case. The section, however, covers "any indictment for murder or manslaughter, or for being an accessory thereto," and we think the correct explanation of the parentheses is that they were intended to indicate how the "formula" should be modified if the indictment is designed to cover murder in the first or second degrees, or manslaughter. We do not construe section 655 to require the fact of robbery to be incorporated in an indictment as part of the crime charged. As pointed out above, sections 475 and 478 were integral parts of the Act of 1809, construed by this court in *Davis v. State, supra,* and *Weighorst v. State,* 7 Md. 442. At the time section 665 was adopted, no such particularity was required. Compare *State v. Juliano,* 103 N. J. L. 663, 138 A. 575, 578. Since the common law forms are still permissible the statutory form could hardly be construed to impose additional requirements in this respect.

We find nothing in *Imbraguglia v. State,* 184 Md. 174, 40 A. 2d 329, relied upon by the appellant, to affect our conclusion. That case turned upon the sufficiency of the description of stolen articles, as against a demurrer to an indictment for receiving stolen goods. The general rule, of course, is that an indictment laid in the language of a statute is sufficient. *Cunningham v. State,* 190 Md.

578, 59 A. 2d 337; *Sturgill v. State,* 191 Md. 75, 59 A. 2d 763.

The appellant contends, however, that the evidence of the prior robbery was irrelevant on the ground that the robbery was completed when the accused secured the money, or at least when he abandoned the stolen car. If, as we have said, evidence of the prior robbery is admissible to show motive and intent, the fact that the robbery was technically completed would not destroy the causal relation between the two crimes or render it irrelevant. But in any event we cannot rule as a matter of law that the robbery was completed, when in fact the hue and cry was promptly raised and the accused was intercepted, within half an hour after the robbery, with the loot and the weapon used in the robbery in his possession. Even in states where the courts, on appeal, can review the weight and legal sufficiency of the evidence, it has been held that the asportation, or taking and carrying away, is incomplete until the robber has "unmolested dominion" over the property, although liability may have attached at an earlier time. *Conrad v. State,* 75 Ohio St. 52, 73, 78 N. E. 957, 960, 6 L. R. A., N. S., 1154, 8 Ann. Cas., 966. In *People v. Boss,* 210 Cal. 245, 290 P. 881, 883, where the shooting occurred during pursuit after a robbery, it was said: "In such a case the continuation of the use of arms, which was necessary to aid the felon in reducing the property to possession, is necessary to protect him in its possession and in making good his escape. Robbery, unlike burglary, is not confined to a fixed locus, but is frequently spread over considerable distance and varying periods of time. The escape of robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend them at the time of or immediately upon gaining possession of said property, their plan would be childlike. The defense of felonious possession which is challenged immediately upon the forcible taking is a part of the

plan of robbery, or, as the books express it, it is *res gestae* of the crime." Many other cases to the same effect are collected in notes in 22 *A. L. R.* 850 and 108 *A. L. R.* 847.

The appellant contends that in any event, the presentation of his case was hindered by representations of the State's Attorney that the State did not intend to rely upon the evidence concerning the robbery to show that the killing was in the perpetration of a robbery. At one point the Assistant State's Attorney agreed with counsel for the accused, that the State was not attempting to show a "killing in the commission of a robbery", but only that "it was a murder committed in an effort to escape from a robbery". Apparently he intended to concede only that Wood did not attempt to rob Kuczak, for later he said: "our position is that under our construction of the law, even though the killing did not result in the actual perpetration or the attempt to perpetrate a robbery, still if it was a continuation of a robbery * * · * which had not yet been completed the contemplation of the law by section 478 would warrant a verdict of murder in the first degree". The Court said: "In the beginning of the proceedings [it was said that] the State was not charging that Wood was attempting to rob Kuczak when he killed officer Benedict. * * * There was no statement * * * on the part of the State that we can remember [that it] would not charge that the evidence brought this case under Section 478." When counsel for the accused suggested surprise, the court said: "I think it is either a question of law [whether the evidence would support a finding that the killing was in the perpetration of a robbery], or a case in which you desire to put on additional testimony. Do you wish to put on additional testimony?" To this counsel for the accused replied: "I desire to have the case reopened so I can make a motion to strike out all of the testimony relating to the previous robbery on the ground that it is not receivable under an indictment which charges a crime under Section 475." This motion was received and overruled. An objection "to the State's Attorney's arguing for a conviction under

Section 478" was also overruled. Counsel for the accused did not, however, take advantage of the court's invitation to take additional testimony. Since the facts relating to the prior robbery were undisputed, it is difficult to see how the accused could have been prejudiced in any way by the alleged misunderstanding.

A point was made in argument that the venue was not proven since the testimony did not definitely identify any of the streets mentioned as being in Baltimore City. Whether we could take judicial notice of their location need not be determined, since the question seems not to have been raised in the court below. Compare *Jianole v. United States,* 8 Cir., 299 F. 496, 498.

*Judgment affirmed, without costs.*