721 A.2d 699

**Diallo Mugabe DISHMAN**

v.

**STATE of Maryland.**

No. 12, Sept. Term, 1998.

Court of Appeals of Maryland.

Dec. 21, 1998.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CHASANOW, Judge.

This appeal arises out of the 1997 first degree murder and robbery conviction of Petitioner Diallo Mugabe Dishman in the Circuit Court for Prince George's County. The Court of Special Appeals affirmed the convictions in *Dishman v. State,* 118 Md.App. 360, 702 A.2d 949 (1997). We granted certiorari to determine whether the Court of Special Appeals properly concluded that Petitioner's indictment under Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 616,[1] did not charge manslaughter and whether the trial court correctly refused Petitioner's request for jury instructions on manslaughter, reckless endangerment and assault and battery. We conclude that the indictment did charge Petitioner with manslaughter, and we reverse the trial court's refusal to submit the man-

---

1. Unless otherwise indicated, hereinafter all statutory references are to Maryland Code (1957, 1996 Repl.Vol.), Article 27.

slaughter charge to the jury but affirm as to reckless endangerment and assault and battery.

## I.

In the early morning of March 11, 1996, a passerby noticed a small fire off the side of Lottsford Vista Road in Prince George's County. The fire turned out to be the burning body of Peverly Hart. According to the medical examiner's testimony, Hart died from asphyxia or lack of air, and her body was burned after she had died. The medical examiner determined that Hart's ankles and arms had been bound with tape while she was still alive and that a two-inch piece of silver tape had "partially cover[ed] the [victim's] nose and mouth."

On March 12, 1996, Petitioner was arrested on bench warrants for charges involving a bad check and driving with a suspended license. He was then taken to an interview room where, over the course of about ten hours, he gave two written statements to police concerning Hart's death. The second statement in particular is relevant to this appeal and will be discussed in more detail below.[2] After he had given these statements, Petitioner took police officers to a pawn shop where the victim's jewelry was located, and to the victim's car, which he had removed to a location in Washington, D.C.

Petitioner and Felicia Jackson were indicted jointly. Jackson was charged as an accessory after the fact, while Petitioner was charged with murder, robbery, robbery with a deadly weapon, and carjacking. Testimonial and other evidence, as well as his own statements, provided strong evidence linking Petitioner to the burning of Hart's body. At the close of its

---

2. Petitioner's first statement maintains that he let someone else use his apartment only to return later to find the victim's body. At trial, counsel for the Petitioner maintained that this statement generated a jury question as to whether he was an accessory after the fact, but the trial court rejected the instruction. We note that Petitioner properly objected to the instruction and appealed to the Court of Special Appeals on the trial court's refusal to give it. Petitioner's brief to this Court, however, does not raise the accessory issue, and therefore, we do not address it.

case, the prosecution entered a *nolle prosequi* as to the robbery with a deadly weapon and carjacking counts. After contentious discussions between defense counsel and the prosecution, the trial court refused to instruct the jury on depraved heart murder, manslaughter, reckless endangerment, and assault and battery. The jury convicted Dishman of murder in the first degree and robbery. He was subsequently sentenced to life for the murder count and ten years for the robbery count.

## II.

Before addressing Petitioner's arguments concerning the trial court's jury instruction rulings, we find it necessary to address the Court of Special Appeals' analysis of "whether the [Petitioner] was charged with manslaughter in accordance with the language in his indictment." *Dishman,* 118 Md.App. at 371, 702 A.2d at 954. We first summarize the premise for the intermediate appellate court's holding, and then we provide our reasons for disagreeing with that premise.

## A.

A charge of murder may be made in either the common law form or the statutory short form. *Hardy v. State,* 301 Md. 124, 137, 482 A.2d 474, 481 (1984). The Court of Special Appeals concluded, and we agree, that Petitioner was indicted in accordance with the statutory form indictment found in § 616. *Dishman,* 118 Md.App. at 371, 702 A.2d at 954. That section, entitled, "Indictment for murder or manslaughter," provides:

"In any indictment for murder or manslaughter, or for being an accessory thereto, it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula substantially to the following effect: 'That A.B., on the ..... day of ..... nineteen hundred and ....., at the county aforesaid, feloniously (wilfully and of deliberately premeditated malice aforethought) did kill (and

murder) C.D. against the peace, government and dignity of the State.' "

As the intermediate appellate court observed, this section was originally enacted as Chapter 248 of the Acts of 1906, and for over ninety years, it has remained in the same form with only a few minor alterations, none of which are relevant to our analysis in this case. *Dishman,* 118 Md.App. at 371, 702 A.2d at 954.[3]

The intermediate appellate court recognized that "generally speaking, under the statutory short form of the indictment, an accused may be found guilty of first degree murder, second degree murder, or manslaughter." *Dishman,* 118 Md.App. at 372, 702 A.2d at 955. The court, however, applied "an exception to the general rule" which that court first recognized in *Brown v. State,* 44 Md.App. 71, 410 A.2d 17 (1979). As articulated in *Brown,* this exception applies when the indictment includes the words "with premeditation" and "deliberately." The indictment in *Brown* alleged that the defendant "did unlawfully, willfully, deliberately and with premeditation kill and slay [the victim]." Although the *Brown* court recognized that the adoption of the statutory form "eroded most of the technical niceties which were required at common law," 44 Md.App. at 76, 410 A.2d at 21, it held that the inclusion in the indictment of the words "with premeditation" and "deliberately" "precludes a construction that the indictment charges manslaughter." 44 Md.App. at 74, 410 A.2d at 20. Moreover, the court held that since the indictment was missing "that indispensable ingredient of murder[,] malice," the indictment also failed to charge murder. *Brown,* 44 Md.App. at 78, 410 A.2d at 22. Therefore, the *Brown* court reasoned the indictment failed to allege *any* crime, and thus, Brown's conviction of second degree murder was reversed.

---

**3.** Chapter 558 of the Acts of 1963, § 7, added the words "against the peace, government and dignity of the State." *See Ross v. State,* 308 Md. 337, 343, 519 A.2d 735, 738 (1987); *State v. Ward,* 284 Md. 189, 200, 396 A.2d 1041, 1048 (1978).

In the case *sub judice*, the indictment alleged that Petitioner "feloniously, wilfully and of his deliberately premeditated malice aforethought, did kill and murder Peverly Hart...." Applying the *Brown* exception to this indictment, the Court of Special Appeals concluded that the inclusion of the terms "deliberately" and "premeditated" meant that the indictment charged murder only, but not manslaughter. We conclude otherwise.

## B.

In one of our first decisions interpreting the statutory form indictment, we addressed an indictment that "would unquestionably be defective" at common law. *Neusbaum v. State*, 156 Md. 149, 155, 143 A. 872, 875 (1928). In finding the indictment constitutional, we noted that statutory form indictments had been enacted in many states "in an effort to escape the excessive formalism of the common law, which formerly made the conviction or acquittal of one charged with crime so often turn upon some technical quibble rather than upon the guilt or innocence of the accused." *Neusbaum*, 156 Md. at 157, 143 A. at 876. We therefore concluded that the short form indictment was sufficient without including an allegation of the manner or means by which the death was caused.

Since *Neusbaum*, we have consistently upheld indictments under § 616 against a variety of challenges. Prior to the intermediate appellate court's decision in *Brown*, we allowed convictions for criminal homicide other than first degree murder in a number of cases even though the charging document contained the terminology of first degree murder, as in this case. For example, in *Wood v. State*, 191 Md. 658, 663, 62 A.2d 576, 578 (1948), the defendant challenged the admission of evidence of a robbery, which had not been charged, under a statutory form indictment that charged that Wood "feloniously, wilfully and of deliberately premeditated malice aforethought, did kill and murder" the victim. Wood argued that he had been indicted on a charge of premeditated murder, and therefore, was not put on notice that the State would attempt to prove felony murder by showing that the death occurred

during the commission of a robbery. *Wood,* 191 Md. at 667, 62 A.2d at 580. We rejected Wood's argument, holding that an indictment in the language of the statutory short form was sufficient and did not "require the fact of robbery to be incorporated in an indictment as part of the crime charged." *Id. See also Carroll v. Warden,* 205 Md. 631, 632–33, 106 A.2d 71, 72 (1954)("A verdict of guilty of manslaughter can be rendered on [a statutory form] indictment for murder."); *Blackwell v. State,* 278 Md. 466, 476, 365 A.2d 545, 551 (1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977)("In *first degree murder indictments* filed pursuant to [statutory short-form indictment] provision, it is well settled that murder in the second degree and manslaughter are lesser included offenses." (Emphasis added)); *State v. Evans,* 278 Md. 197, 199, n. 1, 362 A.2d 629, 630 n. 1 (1976)("Under such an indictment [charging that defendant 'feloniously, willfully, and of deliberately premeditated malice aforethought' murdered victim] the accused could be found guilty of the lesser offenses of murder in the second degree and manslaughter."); *State v. Williamson,* 282 Md. 100, 382 A.2d 588 (1978)(observing that § 616 relaxed the common law charging requirements and holding that defendant charged in the statutory form could be found guilty of first degree murder if he was an accessory before the fact). Even though these cases do not specifically address whether the indictment *charges* manslaughter, the fact that the indictment charged manslaughter is implicit in the language of our decisions.

If our decisions prior to 1978 failed to make clear that second degree murder and manslaughter are charged when a statutory form indictment uses the language of first degree murder, that ambiguity should have been laid to rest a year prior to the Court of Special Appeals' decision in *Brown,* when we issued our opinion in *State v. Ward,* 284 Md. 189, 396 A.2d 1041 (1978). In *Ward,* we observed that "the General Assembly of Maryland relaxed the formal common law requirements of indictment in homicide cases when it enacted Chapter 248 of the Acts of 1906." *Ward,* 284 Md. at 200, 396 A.2d at 1048. We then stated:

"It is well settled that under an indictment pursuant to the statutory formula, *even though it spells out murder in the first degree*, the accused may be convicted of murder in the first degree, of murder in the second degree, or of manslaughter." (Emphasis added).

*Id.*

More recent cases further illustrate our flexible interpretation of § 616. In *State v. Chaney*, 304 Md. 21, 23, 497 A.2d 152, 153 (1985), we found sufficient an indictment that did not contain the words, "felonious," "malice aforethought," or "murder." Noting that unlawfulness is implicit in the words, "did wilfully and deliberately, with premeditation kill and slay," we said that "in ascertaining the existence of jurisdiction in the circuit court, we consider the indictment in its entirety." *Chaney*, 304 Md. at 26–27, 497 A.2d at 155. In *Ross v. State*, 308 Md. 337, 519 A.2d 735 (1987), the defendant challenged the constitutionality of his felony murder conviction on a statutory short form indictment charging that he "feloniously, willfully and [with] deliberately premeditated malice aforethought, did kill and murder [the victim]." 308 Md. at 345, 519 A.2d at 739. Once again, we observed that "[a] defendant charged in the statutory language *employed in this case* is clearly apprised that he is being charged with the crime of murder and that he may be convicted of *murder in either degree, or manslaughter.*" *Id.* (emphasis added). Moreover, we noted that we have "looked with favor upon the general trend of relaxing the formal requirements of indictments to avoid the prolix and often overly technical rules of common law pleading in favor of the shorter and simpler forms." *Ross*, 308 Md. at 346, 519 A.2d at 739. *See also Dykes v. State*, 319 Md. 206, 209, 571 A.2d 1251, 1253 (1990)(observing that criminal information charging that defendant "did feloniously, wilfully, deliberately and maliciously kill and murder [victim]" supported conviction for first or second degree murder or manslaughter).

■ While some of these cases refer to second degree murder and manslaughter as lesser offenses of first degree murder, the language makes clear that an indictment under

§ 616 alleging first degree murder also *charges* second degree murder and manslaughter. Thus, we conclude that the intermediate appellate court's decisions in *Brown* and in the instant case are incorrectly based on "technical quibble" that the statutory short form of indictment was meant to eliminate.

█ Although we do not address accessoryship in this appeal,[4] the same analysis applies to the charge of being an accessory to murder. Section 616 explicitly applies to "being an accessory" to murder or manslaughter, and we have so held. *See Williamson, supra* (observing that § 616 relaxed the common law charging requirements and holding that defendant could be found guilty of first degree murder if he was an accessory before the fact). Therefore, we conclude that Petitioner was charged not just with first degree but also with second degree murder, manslaughter, and with being an accessory to murder.

### III.

Petitioner contends that the trial judge improperly refused to instruct the jury as to the offenses of manslaughter, reckless endangerment, and assault and battery. We begin by addressing the manslaughter charge, which we have held was charged in Petitioner's indictment. We then turn to the uncharged offenses of reckless endangerment and assault and battery.

### A. Manslaughter

#### 1.

█ Petitioner's primary argument on this appeal is that the trial court erred by refusing to give jury instructions on manslaughter. Manslaughter has been defined as "an unlawful homicide without malice aforethought." 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 153, at 343 (15th ed.1994). Maryland follows the common law distinction between murder characterized by the presence of malice and manslaughter

---

4. *See supra* note 2.

characterized by the absence of malice. *Ward,* 284 Md. at 195, 396 A.2d at 1045. By malice we mean " 'the presence of the required malevolent state of mind coupled with the absence of legally adequate justification, excuse, or circumstances of mitigation.' " *Richmond v. State,* 330 Md. 223, 231, 623 A.2d 630, 634 (1993)(quoting *Ross,* 308 Md. at 340 n. 1, 519 A.2d at 736 n. 1).

We have previously defined involuntary manslaughter [5] as an unintentional death occurring in one of three fashions: "(1) by doing some unlawful act endangering life but which does not amount to a felony, or (2) in negligently doing some act lawful in itself, or (3) by the negligent omission to perform a legal duty." *State v. Albrecht,* 336 Md. 475, 499, 649 A.2d 336, 347 (1994); *Cox v. State,* 311 Md. 326, 331–32, 534 A.2d 1333, 1335–36 (1988). Petitioner contends that the evidence generated both the unlawful act and gross negligence variations of involuntary manslaughter.

■ Petitioner further contends unlawful act manslaughter occurs where one causes a death unintentionally while committing a criminal act that is *malum in se* and that is not one of the felonies that gives rise to felony murder. *See Schlossman v. State,* 105 Md.App. 277, 283–85, 659 A.2d 371, 374–75 (1995); *Insurance Co. v. Prostic,* 169 Md. 535, 539, 182 A. 421, 423 (1936). *Cf. State v. Gibson,* 254 Md. 399, 254 A.2d 691 (1969). The negligence variety of involuntary manslaughter requires a gross deviation from the standard of care an ordinary person would use, *i.e.,* the conduct must manifest " 'a wanton or reckless disregard of human life.' " *Albrecht,* 336 Md. at 499, 649 A.2d at 348 (quoting *Mills v. State,* 13 Md.App. 196, 200, 282 A.2d 147, 149 (1971), *cert. denied,* 264 Md. 750 (1972)).

---

5. Because of our disposition of Petitioner's challenge to the trial court's refusal to give an instruction on involuntary manslaughter, we give no opinion on the Court of Special Appeals' ruling as to the trial court's failure to give a voluntary manslaughter instruction based on defense of others. *Dishman,* 118 Md.App. at 375–78, 702 A.2d at 957–58. On remand the trial court may reexamine that question in light of the existing and any new evidence presented.

Since the prosecution in this case had not entered a *nolle prosequi* of the charged offense of manslaughter, the trial court was required to give the manslaughter instruction so long as it was a permissible verdict generated by the evidence. *See* Maryland Rule 4–325(c)("The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding."); *Lansdowne v. State*, 287 Md. 232, 239, 412 A.2d 88, 91 (1980)(holding that the trial judge must "give a requested instruction which correctly states the applicable law and which has not been fairly covered in instructions"); *cf. Ball v. State*, 347 Md. 156, 190, 699 A.2d 1170, 1186 (1997)(observing that Md. Rule 4–325(c) applies to a request to instruct on charged offenses but does not apply to a trial court's refusal to instruct on uncharged offenses).

The determination of whether an instruction must be given turns on whether there is any evidence in the case that supports the instruction. *See, e.g., Binnie v. State*, 321 Md. 572, 581, 583 A.2d 1037, 1041 (1991)(holding in theft case that defendant's uncorroborated statement showing honest belief as to right to property was sufficient to send to jury honest belief defense); *Smith v. State*, 302 Md. 175, 181, 486 A.2d 196, 199 (1985)(holding that accused's alibi statement was sufficient to require jury instruction even though uncorroborated); *Sergeant Co. v. Pickett*, 285 Md. 186, 194, 401 A.2d 651, 655 (1979) (applying similar standard in context of civil trial). The threshold determination of whether the evidence is sufficient to generate the desired instruction is a question of law for the judge. *Dykes*, 319 Md. at 221, 571 A.2d at 1259. The task of this Court on review is to determine whether the criminal defendant produced that minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired. This Court first articulated this standard in *State v. Evans, supra*, where we stated that a defendant charged with murder who seeks instructions on the issue of mitigation or self-defense bears the "burden of initially producing 'some evidence' . . . suffi-

cient to give rise to a jury issue with respect to these defenses." 278 Md. at 208, 362 A.2d at 635.

In *Dykes, supra,* another murder case, we elaborated on the "some evidence" test in the context of the trial court's refusal to give an instruction on imperfect self-defense:

> "*Some evidence* is not strictured by the test of a specific standard. It calls for no more than what it says—'some,' as that word is understood in common, everyday usage. It need not rise to the level of 'beyond reasonable doubt' or 'clear and convincing' or 'preponderance.' The source of the evidence is immaterial; it may emanate solely from the defendant. It is of no matter that the self-defense claim is overwhelmed by evidence to the contrary. If there is any evidence relied on by the defendant which, if believed, would support his claim that he acted in self-defense, the defendant has met his burden. Then the baton is passed to the State. It must shoulder the burden of proving beyond a reasonable doubt to the satisfaction of the jury that the defendant did not kill in self-defense."

319 Md. at 216–17, 571 A.2d at 1257. *See also Sims v. State,* 319 Md. 540, 553, 573 A.2d 1317, 1323 (1990).

On the other hand, where the evidence would not logically support a finding that the defendant committed the offense covered by the instruction, the trial court should not instruct the jury on that offense. As the 8th Circuit has observed,

> "[I]t is beyond dispute that a defendant is not entitled to a lesser-included offense instruction unless the evidence adduced at the trial provides a rational basis upon which the jury could find him not guilty of the greater but guilty of the lesser offense."

*United States v. Elk,* 658 F.2d 644, 648 (8th Cir.1981). The court further noted:

> " '[A] lesser offense instruction [should] be given only when the elements differentiating the two crimes are in sufficient dispute that the jury can rationally find the defendant innocent of the greater but guilty of the lesser offense.

This requirement is intended to prevent the jury from capriciously convicting on the lesser offense when the evidence requires either conviction on the greater offense or outright acquittal.' "

*Elk,* 658 F.2d at 648 n. 6 (quoting *United States v. Brown,* 551 F.2d 236, 239 n. 4 (8th Cir.1977)). *See also* 40 Am.Jur.2d *Homicide* § 530 (1968)("Generally speaking, error cannot be predicated upon the failure of the trial court to instruct the jury on the degrees of homicide lower than the degree of which the accused is found guilty, *if there is no evidence tending to show the commission of a lesser degree of homicide.")*(emphasis added). Thus, a trial court could properly refuse a manslaughter instruction in a murder case where the evidence was, for example, that the victim was shot numerous times in the head and the only defense was an alibi. In *State v. Alston,* 341 N.C. 198, 461 S.E.2d 687 (N.C.1995), the North Carolina Supreme Court held that the trial court properly refused a second-degree murder instruction where the defendant threatened to kill the victim and went to the victim's residence "to carry out his threat to 'smash in' her face." 341 N.C. at 244, 461 S.E.2d at 712. The defendant "bludgeoned her mercilessly, and then killed her by forcing her face into a pillow for three or four minutes." *Id.* The court observed that a second-degree murder instruction would involve a "total disregard of the evidence." *Id. See also Ohio v. Campbell,* 69 Ohio St.3d 38, 630 N.E.2d 339, 349–50 (1994)(upholding trial court's refusal to give involuntary manslaughter instruction when evidence showed four separate stab wounds in vital areas). We next apply these principles to Petitioner's contention that the trial court should have submitted manslaughter instructions to the jury.

### 2.

■ The State in this case produced no eyewitness testimony as to the circumstances of the homicide and no conclusive evidence as to the exact cause of Hart's death from lack of

air.[6] The only direct evidence placing Petitioner on the scene at the time of Hart's death, and as to his state of mind at that time, was Petitioner's second statement to the police. Petitioner contends that this statement generated the evidence necessary for an involuntary manslaughter instruction. The statement begins by describing how the victim, Peverly Hart, and "Fee" (Felicia Jackson, Petitioner's fiancé) were arguing over Hart's desire that Jackson help her steal clothes and over the means of transportation to Hart's son's birthday party. It continues:

> "Peverly grabed [sic] Fee, by the kitchen, by the hair with one hand. [T]hey threw a couple punches (I thought they were joking at first.) Peverly started reaching in her pockets, I grabed [sic] Peverly by the jacket collar to try to pry them apart[.] I fell backwards onto the coach [sic] pulling Peverly and Fee with me. A few moments later in the midst of the confusion Peverly wasn't moving. She (Peverly took one) more deep breath. So I thought she was fine then she laid theire [sic]. Fee told me Peverly was big in the drug game and if we call the police, Peverly's folks will come back and get us or our family's [sic] and it was all just an [accident]. I wanted to get Peverly off of Fee. I paniced [sic] and so did Fee. This is the absolute truth then we left out and came back at 4:30–5:00. I made some calls to get rid of her. The way Fee made it sound was like Peverly was 'Mrs. Raffus' and not to be messed with, and no one would care if it was an accident. I didn't try to choke anyone and Fee wasn't either."

When asked why tape had been used on the victim, Petitioner responded: "Because she was still breathing and I did not want her to get up and go no where. So I taped her hands and feet together." Asked if Hart was alive when he put the tape on her mouth, Dishman responded: "She had taken a deep breath and then she just laid there."

---

6. The medical examiner testified that while the cause of death was asphyxiation, he could not say with reasonable medical certainty the particular cause of asphyxiation.

On the basis of Petitioner's statement, the trial judge instructed the jury on first and second degree murder. Defense counsel based his request for an involuntary manslaughter instruction on similar evidence:

"[T]he defendant, conscious of the risk now, I guess putting tape over someone's mouth, if it is—he had to be conscious of that risk. He acted in a grossly negligent manner, which means that I put tape over someone's mouth, knowing that that could stop someone from breathing in a manner that created a high degree of risk. On the other hand, the State also offered a theory that the grabbing of the collar sufficiently damaged the strap muscles as to cause the asphyxiation, and it also fits in, how he grabbed her, how he negligently grabbed her and pulled her, which damaged the muscles. The medical examiner has not told us to a degree of ... medical certainty what caused the asphyxiation."

Referring to the same evidence regarding the taping of the victim's mouth, the prosecution requested an instruction on second degree depraved heart murder, and the following discussion took place:

"[State's Attorney]: I think that the defendant's conduct in this case was definitely of a degree where it fits the second degree depraved heart, in terms of the extreme disregard that his conduct would in fact result in the death of the victim in this case.

[Defense Counsel]: What conduct?

[State's Attorney]: The taping of her mouth.

[Defense Counsel]: I thought the taping of her mouth, from the government's first argument, was that that was the premeditation specific intent to kill.

\* \* \*

[State's Attorney]: It is interesting that with respect to whether the facts justify both theories, [defense counsel] repeatedly says this is a manslaughter case, which again would indicate a depraved heart theory, and yet he sees that as a valid instruction, but not second degree depraved heart."

In this initial discussion, the trial court ruled against giving the depraved heart instruction, but reserved ruling on the request for an involuntary manslaughter instruction. After a recess, the following exchange took place outside the presence of the jury, where the court ruled against a manslaughter instruction:

"[State's Attorney]: Your Honor, the State's position is if in fact you were to give an involuntary manslaughter count to the jury we would have to give second degree depraved heart, because they go hand in hand.

[The Court]: Are you asking for a manslaughter instruction?

[State's Attorney]: My position is that you can't have manslaughter without the second degree depraved heart.

[The Court]: You haven't told me whether or not you are asking for a manslaughter instruction or not.

[State's Attorney]: I am not asking for it unless there is a second degree depraved heart, because they go hand-in-hand, and you read the language, and look at the Maryland Pattern Jury Instruction, it reads second degree depraved heart and involuntary manslaughter. You can't have that without the first one....

[The Court]: Right. I understand that.

[State's Attorney]: I am saying you can't have one without the other.

[The Court]: But assuming we have both—

[State's Attorney]: If we were to have both, I don't have an objection to having both.

[The Court]: Are you requesting a manslaughter instruction, Madam State?

[State's Attorney]: I am requesting both the manslaughter and the second degree depraved heart. That is what I would be requesting.

[The Court]: So you are requesting that?

[State's Attorney]: Both, yes.

[The Court]: Any objection, [defense counsel]?

> [Defense Counsel]: Your Honor has already ruled on the depraved heart. I have no objection to the involuntary manslaughter, but I do have an objection to depraved heart, and you have already ruled on it. I thought we were not supposed to reargue things.
>
> [The Court]: We are not. Her statement is that they go hand-in-hand.
>
> [Defense Counsel]: I can give you more law why they don't. They are different. They are not hand-in-hand at all.
>
> [The Court]: Okay. Then my original ruling on that will stand."[7]

These exchanges reveal that counsel for both the State and defense believed that the evidence indicated that Petitioner may have acted without a specific intent to kill or to cause serious bodily harm, but that he still caused Hart's death. The prosecution believed the facts merited a depraved heart murder instruction; the defense believed they generated an involuntary manslaughter instruction. Depraved heart does not require an intent to kill. 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 145, at 287 (15th ed.1994). Depraved heart murder requires that the "defendant ... commit an act imminently dangerous to others and evincing a depraved and malignant heart regardless of human life and fatally bent on mischief. * * * He is indifferent as to whether death results, or he may even hope that it will not result." 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 145, at 286–87 (15th ed.1994). As noted above, the gross negligence variation of involuntary manslaughter requires reckless or wanton conduct. *See Albrecht*, 336 Md. at 499, 649 A.2d at 348. Thus, counsel for both sides agreed that the facts generated the jury question of whether Dishman acted recklessly or with gross negligence to cause the death of Hart.[8] Counsel for the State

---

7. After the jury had begun deliberating, the State changed its mind and sought a manslaughter instruction. Defense counsel objected to any late instruction, however, because he had been limited in his ability to argue manslaughter in his closing arguments.

8. In light of the arguments made by counsel and the evidence generated, *see supra*, we disagree with the Court of Special Appeal's conclusion

and defense were, in essence, arguing for different gradations of homicide offenses that do not require a specific intent to kill.[9] While our cases have not drawn a precise line between depraved heart murder and involuntary manslaughter and we are not called upon to do so in this case, we observe that the difference is one of the degree of culpability. In defining both crimes we have used the term "reckless." *See Duren v. State,* 203 Md. 584, 590, 102 A.2d 277, 280 (1954)(gross negligence variation of involuntary manslaughter requires "reckless disregard for human life"); *Robinson v. State,* 307 Md. 738, 744, 517 A.2d 94, 97 (1986)(depraved heart murder involves " 'the wilful doing of a dangerous and reckless act' ")(quoting *DeBettencourt v. State,* 48 Md.App. 522, 530, 428 A.2d 479, 484 (1981)). The subtlety between the offenses is evident in the Maryland pattern jury instructions. Depraved heart murder requires that the defendant must "act[ ] with extreme disregard of the life-endangering consequences" and with a *"very high degree of risk to . . . life,"* while involuntary manslaughter requires that the defendant act in a "grossly negligent manner . . . that created a high degree of risk to human life." MARYLAND CRIMINAL PATTERN JURY INSTRUCTIONS 4:17.8(B), at 258–59 (1997)(emphasis added). Both crimes require that the defendant be conscious of the risk to human life of his or her conduct. *See id.; Robinson,* 307 Md. at 745, 517 A.2d at 98; *Albrecht,* 336 Md. at 500, 649 A.2d at 348. As Professors LaFave & Scott have observed:

> "The distinctions between an unreasonable risk and a high degree of risk and a very high degree of risk are, of course, matters of degree, and there is no exact boundary line between each category; they shade gradually like a spectrum from one group to another." (Footnote omitted).

---

that imperfect defense of others was Petitioner's "only factual basis for requesting a manslaughter instruction at trial." *Dishman,* 118 Md.App. at 376, 702 A.2d at 957. Although the intermediate appellate court addressed only defense of others, the record shows that defense counsel made other arguments for instructions on manslaughter.

**9.** At oral argument, the State conceded that the evidence demonstrated gross negligence.

LaFave & Scott, Substantive Criminal Law § 7.4, at 200 (1986). *See also* Samuel H. Pillsbury, *Crimes of Indifference*, 49 Rutgers L.Rev. 105, 121 (1996)("Involuntary manslaughter normally covers less risky behavior than that of depraved-heart murder; i.e., conduct less obviously dangerous and, perhaps, more justifiable." (Footnote omitted)).

In the instant case, we agree with counsel for both sides that the evidence would have allowed the jury to conclude that Petitioner caused Hart's death unintentionally but with gross negligence or with extreme disregard of the life-endangering consequences of his actions. Whether the victim's death resulted from Dishman's conduct in choking the victim during a mutual fracas (also involving Felicia Jackson) or whether she died as a result of tape being placed over her mouth, there was ample evidence upon which the jury could have rationally concluded that Petitioner caused the victim's death without intending to kill her or cause her serious bodily injury.[10] Because (1) the indictment charged manslaughter, (2) the State never entered 'a *nolle prosequi* of the manslaughter charge, and (3) the evidence allowed the jury to conclude that Petitioner acted with gross negligence and not a specific intent to kill or cause serious bodily injury, the trial court erred by refusing the manslaughter instruction.

Furthermore, the trial court's refusal to instruct the jury on manslaughter gave the jury only two options with respect to Hart's death. First, it could convict Petitioner of a specific intent crime causing the victim's death (either first or second degree specific intent murder), or, second, it could acquit Petitioner of any homicide crime. Theoretically, if the jury concluded that Petitioner caused Hart's death but that he did not specifically intend to kill or cause her serious bodily injury, it would have no choice but to return a verdict of acquittal. In reality, however, given the violent nature of the events, and

---

**10.** We note, without deciding, that the facts may also support an instruction on unlawful act involuntary manslaughter, *e.g.*, that the homicide occurred during the commission of an assault and battery. We need not reach the question given our conclusion that the facts generated the gross negligence variety of involuntary manslaughter.

particularly the evidence linking Petitioner to the burning of Hart's body, a jury may find it quite difficult to fully exonerate him. As the Supreme Court has observed: "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." *Keeble v. United States*, 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844, 850 (1973); *see also Hook v. State*, 315 Md. 25, 38, 553 A.2d 233, 240 (1989). As in *Keeble*, in this case "the nature of petitioner's intent was very much in dispute at trial." 412 U.S. at 213, 93 S.Ct. at 1998, 36 L.Ed.2d at 850. Moreover, as a result of the evidence regarding the burning of the victim's body, Petitioner appears "plainly guilty of *some* offense." *Id.* The Supreme Court has observed, in a capital case, that "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction." *Beck v. Alabama*, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392, 402–03 (1980); *see also State v. Bowers*, 349 Md. 710, 727 n. 6, 709 A.2d 1255, 1263 n. 6 (1998)(noting that we have applied the *Beck* rationale to non-capital cases).

The reasoning of *Beck* applies with some force here. As noted above, the instant case does not involve an uncharged lesser included offense or a charged offense for which the prosecution subsequently entered a *nolle prosequi;* rather, it involves the *charged* offense of manslaughter which was never *nol prossed* and which, in essence, counsel for both sides felt was generated by the evidence. Thus, Petitioner had every expectation of a manslaughter instruction, but the jury was refused the third option of convicting the Petitioner of a lesser homicide crime when the facts seemed to favor some type of conviction. While Petitioner's life sentence is a step removed from a death sentence, his trial was irreversibly infected by the court's failure to allow the jury to return a verdict finding that Petitioner caused the victim's death by

gross negligence and not through an intentional act designed to cause death or serious bodily injury.

### B. Reckless Endangerment

 In contrast to manslaughter, the State did not charge Petitioner with reckless endangerment, and reckless endangerment, a statutory offense, must be specifically charged to support a conviction. Section 12A–4, "Charging documents," provides in pertinent part:

> "(d) *Reckless endangerment—Specific charge required.*—In order to be found guilty of reckless endangerment under § 12A–2 of this subheading, a defendant must be specifically charged with reckless endangerment."

While this section was not effective until approximately six months after the events leading to Petitioner's conviction, our cases prior to the effective date of § 12A–2 arose out of criminal informations specifically charging reckless endangerment. *See Albrecht,* 336 Md. at 483, 649 A.2d at 340; *Bowers,* 349 Md. at 712, 709 A.2d at 1256. We have never specifically addressed the question of whether a defendant is entitled to an instruction on reckless endangerment when the State has not charged reckless endangerment in the charging document. We now conclude that, even prior to the enactment of § 12A–4(d), reckless endangerment must have been specifically charged in order to be sent to the jury. Therefore, we hold that the trial court did not err by refusing to give the jury an instruction on reckless endangerment.

### C. Assault and Battery

 Finally, Petitioner contends that the trial court erred by refusing a jury instruction on the offense of assault and battery.

The evidence that would support an assault and battery conviction in this case—Petitioner's taping of the victim's mouth, wrists, and ankles—is the exact same evidence that supports the murder and manslaughter charges. The evidence leaves little, if any, room for the jury to find Petitioner

guilty of assault and battery but not a homicide crime. A defendant is not entitled to have the jury instructed on a lesser included offense unless there exists, in light of the evidence presented at trial, a rational basis upon which the jury could have concluded that the defendant was guilty of the lesser offense, but not guilty of the greater offense. *State v. Bowers*, 349 Md. 710, 722, 709 A.2d 1255, 1260 (1998); *Ball v. State*, 347 Md. 156, 191–92, 699 A.2d 1170, 1186 (1997). *See* 2 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 498, at 799 (2d ed. 1982)("[I]f the evidence shows that if defendant committed any offense at all, it must have been the greater offense, the jury should not be instructed on the lesser offense."). To require an assault and battery charge in this case would open the proverbial Pandora's Box by entitling defendants to assault and battery instructions in virtually every murder case. Not only would this create an undue burden on trial courts; it would run the risk of inundating juries with extraneous instructions, thereby obfuscating, and not furthering, the jury's task of finding the truth.

## IV.

In sum, we hold that the statutory form indictment for murder and manslaughter found in § 616 charges each of the homicide offenses, even if it is couched in terms of first degree murder. This holding is consistent with our past decisions observing that the statutory form of indictment was intended to eliminate the "technical quibble" of the common law charging requirements. We further conclude that the evidence in this case is sufficient to generate a jury question as to manslaughter. We affirm, albeit on slightly different grounds than the intermediate appellate court, the trial court's refusal to instruct the jury on the uncharged offenses of reckless endangerment and assault and battery.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE CONVICTION OF FIRST DEGREE MURDER AND REMAND THIS CASE TO THE CIRCUIT**

304

COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.